**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____

IN RE:                                              )

LAUREL HIGHLANDS
FOUNDATION, INC.,

    Debtor.

_____

PASSAVANT MEMORIAL HOMES;
PASSAVANT MEMORIAL HOMES
FOUNDATION; KARL E.
FRANKENSTEIN; W. HARRISON
VAIL; CHRISTINA VAIL; DARLENE
BELAJAC; THEODORE R. BELAJAC;
LAWRENCE R. PERRET;
FRANK V. ROBERTI; SANDRA L.
ROBERTI; ELLEN WILF; CHARLES
WILF; VIRGINIA SULLIVAN; GENE
R. SULLIVAN; DAVID BARTCZAK;
DEBRA BARTCZAK,

    Movants,

    v.

LAUREL HIGHLANDS
FOUNDATION, INC.,

    Respondent.

_____

LAUREL HIGHLANDS
FOUNDATION, INC.,

    Plaintiff,

    v.

KARL E. FRANKENSTEIN;
W. HARRISON VAIL; CHRISTINA
VAIL; DARLENE BELAJAC;
THEODORE R. BELAJAC;

**Bankruptcy No. 12-22558-CMB**

**Chapter 11**

**Doc. Nos. 47 & 48**

**Adv. No. 12-02195-CMB**

**Adv. Doc. Nos. 1 & 22**

1

LAWRENCE R. PERRET;                    )
FRANK V. ROBERTI; SANDRA L.            )
ROBERTI; ELLEN WILF; CHARLES           )
WILF; VIRGINIA SULLIVAN; GENE          )
R. SULLIVAN; DAVID BARTCZAK;           )
DEBRA BARTCZAK;   JOHN GERA;           )
JOHN KORBA; JOSEPH MIZIKAR;            )
BRAD GEYER; KRISTEN PRITTS;            )
RONALD VEZZANI; PASSAVANT              )
MEMORIAL HOMES; PASSAVANT              )
MEMORIAL HOMES FOUNDATION,             )
                                       )
        Defendants.                    )
_____)

## MEMORANDUM OPINION

The matters before the Court are (1) the *Notice of Removal* commencing the above-captioned adversary proceeding, (2) the *Emergency Joint Motion to Remand and Request for Expedited Hearing* ("Motion to Remand"), (3) the *Emergency Joint Motion to Dismiss the Chapter 11 Voluntary Petition Filed by Laurel Highlands Foundation, Inc. and Request for Expedited Hearing* ("Motion to Dismiss"), and (4) the *Emergency Joint Motion for Relief from the Automatic Stay Pursuant to Section 362(d)(1) of the Bankruptcy Code and Request for Expedited Hearing* ("Motion for Relief from Stay"). Upon consideration of the motions filed, the responses thereto, the arguments and evidence presented at the hearings, the parties' briefs, and for the reasons expressed herein, the Court finds that due to the extraordinary circumstances presented in this case, dismissal is appropriate pursuant to 11 U.S.C. §305(a), or in the alternative pursuant to §1112(b). Furthermore, even if this Court were to permit the bankruptcy case to proceed, the claims asserted by the debtor, Laurel Highlands Foundation, Inc. ("Laurel"), in the state court action, which Laurel removed to this Court, are non-core. Based on this and other factors, the Westmoreland County Court of Common Pleas is the appropriate forum for the removed action to continue based upon the principles of mandatory abstention or, in the

alternative, permissive abstention or equitable remand. In addition, relief from stay is warranted

based upon the totality of the circumstances to permit the litigation to continue in that forum.


I.      **Background**

Laurel, a nonprofit corporation with "members" as opposed to "shareholders", offers a

variety of services to individuals with intellectual disabilities, mental health needs, and

behavioral issues. Defendant Passavant Memorial Homes (hereinafter, together with Defendant

Passavant Memorial Homes Foundation, "Passavant") is another Pennsylvania Nonprofit

Corporation that cares for similar individuals as Laurel in group home settings.

In the spring of 2011, Laurel approached Passavant about a possible affiliation, and

Passavant expressed interest in acquiring Laurel. In consideration of an affiliation, Laurel's

board of directors and Passavant commenced due diligence. Certain members of Laurel (the

"Petitioning Members"[1]) supported the acquisition by Passavant. Ultimately, however, Laurel's

board of directors chose to terminate due diligence with Passavant. Nonetheless, the Petitioning

Members held a meeting and voted to approve Passavant's acquisition of Laurel. Thus, the board

of directors and the Petitioning Members were at odds and were taking inconsistent action,

apparently both on behalf of Laurel. Litigation was clearly imminent.

On July 25, 2011, approximately nine months prior to filing for relief under the

Bankruptcy Code, Laurel commenced an action in the Court of Common Pleas of Westmoreland

County pursuant to Pennsylvania's Declaratory Judgments Act. In its Complaint, Laurel sought a

declaratory judgment regarding whether the acts taken by the Petitioning Members constituted

---

[1] Defendants Karl E. Frankenstein, W. Harrison Vail, Christina Vail, Darlene Belajac, Theodore
R. Belajac, Lawrence R. Perret, Frank V. Roberti, Sandra Roberti, Ellen Wilf, Charles Wilf,
Virginia Sullivan, Gene R. Sullivan, David Bartczak, and Debra Bartczak are referred to herein
as the "Petitioning Members".

official and authorized actions of the members such that they must be followed and obeyed by Laurel's board of directors and which individuals comprised Laurel's membership for purposes of entitlement to vote at meetings. Through Counterclaims, the Petitioning Members and Passavant sought, *inter alia*, a declaratory judgment providing that the members' votes to approve the asset purchase agreement at their meetings were valid and enforceable and, accordingly, directing an officer to execute the agreement. After the commencement of the state court litigation, on September 6, 2011, the Petitioning Members held another meeting regarding the acquisition of Laurel by Passavant and to consider removal of certain board members, appointment of other individuals as board members, and approval of a new set of by-laws. Therefore, the control of Laurel is central to the pending dispute.

The state court action was pending before the Honorable Anthony G. Marsili. By order dated September 16, 2011, in light of the continued power struggle between the members and the board, the parties were directed to maintain the status quo while the case proceeded. The September 16 Order (*Passavant's Exhibit 16*) provided, in part, as follows:

> (A) Until further order of court, the parties shall maintain the status quo in this proceeding and shall take no actions or steps which will alter, affect or change the positions or status of the parties, their relationship to one another or the status of the employees, staff, consumers, board members, or members of Laurel; including but not limited to: (i) noticing or holding any special meetings of the Board of Directors or the membership; (ii) removing any Directors from Laurel's Board; (iii) taking any action to change the Membership of Laurel; and/or (iv) taking any action to disenfranchise the current Members of Laurel.
>
> (B) Notice of all regularly scheduled meetings of the Board of Directors of Laurel will be provided to all Current Board Members and all Current Board Members shall have the right to attend, and shall not be barred from, any such meetings of the Board of the Directors. For purposes of this Order, the term "Current Board Members" shall mean those members of Board of Directors of Laurel who were elected or appointed prior to the initiation of this lawsuit.

On March 12, 2012, after an evidentiary hearing held November 30, 2011, Judge Marsili issued a detailed decision and order denying the parties' cross-requests for preliminary injunctive relief. In the March 12 Order (*Laurel's Exhibit 60*), the parties were directed once again to maintain the status quo until further order of court. In addition to reiterating the above-cited directives, Judge Marsili defined "maintain the status quo" to mean "only to conduct normal or usual business activities, as defined in the ordinary course of business. Therefore, no extraordinary actions, outside of the ordinary course of business, shall be taken by any of the parties." Trial on the request for permanent injunction was scheduled for August 13, 2012 through August 16, 2012.

A number of motions were filed and pending in the state court action on May 11, 2012. Judge Marsili indicated that, due to the urgency of the situation, he would be issuing his decision on said motions on May 14, 2012. Among the issues before him was a renewed request by Passavant and the Petitioning Members to enter a preliminary injunction. In the renewed motion for preliminary injunction, Passavant and the Petitioning Members alleged that actions were being taken in violation of status quo orders and further indicated that there was an urgent need for an injunction due to Laurel's decision to terminate health insurance benefits for certain employees, risking the departure of those employees, and ultimately threatening the level of care provided by Laurel. Thus, Judge Marsili expressed his intent to rule expeditiously.

Before the state court was able to issue its decision as intended, and on the date the judge stated he would rule, Laurel commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The state court litigation was stayed by the commencement of the bankruptcy case. Also, on the same date, Laurel filed its Notice of Removal, removing the case of *Laurel Highlands Foundation, Inc. v. Karl E. Frankenstein, et al.* to this Court.

Passavant and the Petitioning Members oppose the removal and wish to proceed with the litigation in state court. They assert a number of grounds in support of their request. After a status conference at which this Court indicated its concern that the removed action was non-core and questioned the motivation of the bankruptcy filing, Laurel filed a response to the Motion for Remand and Motion for Relief from Stay, wherein it did not object to the continuation of the action in state court provided that this Court continue to exercise jurisdiction over the assets of the bankruptcy estate. However, as to the bankruptcy case as a whole, Passavant and the Petitioning Members contend that the bankruptcy filing was without proper authorization and in bad faith and, accordingly, seek dismissal. After the conclusion of the evidentiary hearings held May 31, 2012, and June 4, 2012, and review of the entire record, the Motion to Dismiss, Notice of Removal, Motion for Remand, and Motion for Relief from Stay are ripe for decision.

## II.    Standing

As a preliminary matter, Laurel challenged Passavant's standing to seek dismissal of this bankruptcy case. However, the motion to dismiss was filed jointly by Passavant and the Petitioning Members, whose standing is not challenged; therefore, the Court need not address Passavant's standing and the Motion to Dismiss will be addressed herein.

## III.    Findings of Fact

At the outset, this Court notes that numerous objections were made to testimony regarding the current membership of Laurel and the version of the by-laws currently in effect. These matters are at the heart of the state court action and those are not the matters presently before this Court. The issues currently before this Court are (1) whether Laurel filed its

bankruptcy petition in good faith with proper authority and (2) whether the state court is the appropriate forum for the removed action to proceed. As Laurel has consented, albeit with qualification, to the resolution of the removed action by the state court, the primary focus of the evidentiary hearing was whether the bankruptcy petition was filed in good faith.

At the evidentiary hearing, Laurel called two witnesses: John Gera and Cher Moser. Passavant and the Petitioning Members also called two witnesses: William Krieger and W. Harrison Vail. By way of background, Gera and Vail are members of the current board of directors of Laurel pursuant to the status quo orders. Vail, a Petitioning Member, also identifies himself as a member of the reconstituted board as allegedly established through membership meetings. Moser remains the executive director of Laurel pursuant to the status quo orders despite the decision of the reconstituted board to remove her. The issues of who constitutes Laurel's membership, board of directors, and management are among the issues to be resolved in the underlying litigation. Therefore, this Court makes no findings as to those issues herein and identifies the witnesses as they identified themselves at the hearing.

<u>Testimony of Gera</u>

Gera identified himself as the President of Laurel's Board of Directors and a member of Laurel. Much of Gera's testimony did not focus on the purpose of the bankruptcy filing. From his testimony, however, it is clear that he did not consider Laurel to be in financial distress, he believed the state court's status quo orders were a hindrance to Laurel's ability to conduct business, and the potential of an adverse ruling by Judge Marsili on the emergency motion for preliminary injunction prompted the filing of the petition.

As to the effect of the state court's status quo orders on Laurel, with the exception of Laurel's motion regarding its intention to terminate certain employees' health insurance benefits, Gera did not have knowledge of any other motion by Laurel seeking permission to take actions that he characterized as prohibited by the status quo order. As to the disruption caused by the litigation, Gera did not provide testimony of any extreme hardship to Laurel but rather described the typical burdens.

Gera testified to the events immediately preceding the filing of the bankruptcy petition. According to Gera, after the hearing on the renewed motion for preliminary injunction in the state court proceedings, Cher Moser, who attended the hearing, reported to Gera the concern that Judge Marsili may place Passavant in control of Laurel or that Laurel may be put into receivership. Counsel was contacted and the bankruptcy petition was commenced with the approval of seven of the nine board members. The testimony was clear that neither Vail nor Theodore Belajac (both board members and Petitioning Members) were invited to participate in the meeting. According to Gera, their inclusion was unnecessary as they were in conflict pursuant to the by-laws. Thus, the resolution to file the bankruptcy petition (*Laurel's Exhibit 70*) was signed by only seven board members.

As to Laurel's financial strength, Gera testified that Laurel has money in the bank, approximately $1.269 million. The fiscal report presented at the May 23, 2012 board meeting (*Passavant's Exhibit 36*) indicated Laurel had a net income of approximately $360,000 as of March 31, 2012, and Laurel was anticipated to finish the year with a surplus.

Based on Gera's testimony, this Court finds that the purpose of filing the bankruptcy petition was not due to financial distress, but rather due to the purported burden of complying with the state court orders and, primarily, the concern that Judge Marsili would place Passavant

in control of Laurel or place Laurel in receivership after the May hearing. Thus, the bankruptcy

filing was a means by which to keep Laurel's current management in control and to evade the

state court's status quo orders.


Testimony of Moser

Moser, who identified herself as serving in a dual role as the controller and executive

director of Laurel, testified as to the disruption caused by the litigation, the perceived reduction

in funding that Laurel was facing, and the increase in premiums for employees' health insurance.

Moser contends that the litigation caused distraction and disruption from operation of the

business. However, this Court finds that Moser did not establish a severe disruption to Laurel

due to the litigation.

Furthermore, Moser testified that the status quo orders prohibit her from taking certain

actions. Due to the orders, she is to seek the court's permission prior to taking certain action and

this, she contends, interferes with Laurel's ability to accept new clients and obtain new properties

as needed. However, Moser acknowledged that Laurel has not sought permission from the judge

to act on these stated needs and to obtain relief from the status quo orders.

Moser also expressed concerns regarding potential reductions in public funding,

particularly waiver funding from the state. Any predictions regarding the *proposed* funding are

highly speculative. However, when presented with credible evidence, including the proposed

state budget, which at this time indicates an *increase* in funding, this Court concludes that the

*reduction* anticipated by Moser is not a realistic threat to Laurel.

In addition, Moser expressed concerns regarding the increased cost of providing health

insurance benefits for employees. Although this cost will increase by forty-three percent, that

increase is consistent with previous years. According to Moser, the decision to terminate health

insurance benefits for certain employees resulted from the combined considerations of the

increased premiums and the threat of a budget reduction. As the evidence establishes that Laurel

will not experience the budget reduction that Moser anticipated, the increased health insurance

premiums do not present a budget crisis given the current financial state of Laurel.

The credible evidence establishes that, as of the fiscal report provided at the May 23,

2012 board meeting, Laurel is financially healthy. Laurel had a surplus and Moser projected that

Laurel will end the year with a surplus. Laurel had positive net assets of $3.8 million, and $1.269

million in the bank. Laurel pays its bills as they come due. Furthermore, Laurel was able to

obtain a $750,000 line of credit dated May 11, 2012 (*Passavant's Exhibit 37*), just days before

the bankruptcy filing, through PNC Bank.[2] It is also noteworthy that Laurel's line of credit with

PNC Bank had not been used for nearly two years as it simply had not been needed.

Furthermore, to remove all doubt as to Laurel's financial condition, Moser released a memo

dated May 15, 2012 (*Passavant's Exhibit 26*) to Laurel's employees reassuring them that, despite

the filing of the bankruptcy petition, Laurel's "finances remain strong". The memo further

provided an alternative motive for the bankruptcy filing: "In order to finally bring to an end

Passavant's attempts to take over [Laurel], [Laurel] has determined to afford itself of rights

granted it under Chapter 11 of the United States Bankruptcy Code." In other words, the precise

issue pending before Judge Marsili, control of Laurel, led to the commencement of the

bankruptcy case.

Thus, this Court finds that the motivation for filing the bankruptcy petition was the

pending ruling of the state court on the emergency motion for preliminary injunction. Moser

---

[2] At the June 4, 2012 hearing, Moser testified that, after the bankruptcy case was filed, the line of
credit was canceled. The status of the line of credit was not clarified on the record.

testified as to her impressions upon attending the May 11, 2012 hearing. At that hearing, Moser

recalled that Judge Marsili was considering installing Passavant as interim management or

possibly appointing a receiver. She was very concerned after the hearing and reported her

concerns to Gera that the court planned to rule in just a few days. She stated that if Passavant was

placed in charge, then Laurel would no longer be able to continue its litigation with Passavant.

As these were the circumstances immediately preceding the filing of the bankruptcy petition, the

Court finds that the bankruptcy case was primarily a means to avoid a ruling which would have

threatened the control of the current management and directors of Laurel.

Laurel now contends that, after the filing of the bankruptcy petition, a new threat to its

continued operation has become apparent. Moser testified in response to representations made by

counsel for the Pennsylvania Department of Public Welfare ("DPW") at the May 23, 2012 status

conference before this Court. The DPW licenses Laurel and provides the overwhelming bulk of

its funding. Moser testified that, without the continued funding from DPW, Laurel would be out

of business. At the status conference, counsel for the DPW represented as follows:

> As I said, I'm saying here for the debtor's understanding because this bankruptcy
> can go nowhere, it can go nowhere. We're done with these folks. We were done
> with these folks before they had the bankruptcy when we saw what was in the
> papers and we saw the $650,000 that had been diverted to an internal corporate
> war. We're done. We're done.
> Now, we will do nothing to precipitate a crisis. We have not issued them their
> license. We don't know if we are going to issue them a license. We're not going
> to revoke their license, withhold it, until this Court rules. But, I can tell you that as
> far as from a bankruptcy organization standpoint, when you have a monopsony
> situation, where there's really only one person who is buying your goods and that
> person does not want to do business with you anymore, it's done. It's done. So, I
> would urge this Court to move very expeditiously.

*See* Transcript of 05/23/12, Doc. No. 70, at 18-19. Counsel specifically represented, "I can tell

you that the Department's position is that we have lost confidence in the management of this

debtor. That the Department's position is that this debtor needs to be transitioned to what appears

to be the only adult in the room, which is Passavant." *Id.* at 17. As of the May 23, 2012 status

conference, counsel for the DPW clearly did not support Laurel's current management. This

Court finds that, if the DPW were to terminate providing funds to Laurel, then Laurel would not

be able to remain in business.


Testimony of Krieger

William Krieger was called as an expert witness regarding his analysis of Laurel's

finances in conjunction with the proposed budget and to determine whether Laurel is solvent. He

is a certified public accountant licensed to practice in Pennsylvania and possesses numerous

other qualifications. Among other positions held by Krieger, he served as chief financial officer

of Western Psychiatric Institute and Clinic and spent some time between 2005 and 2006 as the

interim finance director of Mainstay Life Services, which he described as an agency very similar

to Passavant and Laurel.

Although what will ultimately be provided in the state budget is pure speculation,

Krieger concluded, based upon credible evidence, that there was no basis whatsoever to conclude

that Laurel was facing a reduction of funding to the extent stated by Moser. Krieger noted that

while county funding, which represents a small portion of Laurel's overall funding, faced a

reduction of twenty percent, the state waiver funding, which comprises the majority of Laurel's

budget, was proposed to increase.[3] Even if the proposed increase is not ultimately a part of the

final budget, Krieger testified that it was difficult to foresee a decrease of any magnitude.

Krieger also consulted with the deputy director of the Department of Public Welfare to confirm

that his analysis was correct.

---

[3] This Court notes that Moser's testimony did not credibly contradict this conclusion.

As to the solvency of Laurel, Krieger determined that Laurel is solvent and able to pay its debts as they come due. He further determined that Laurel has enough funds to absorb the increased costs of employee health benefits.

Based upon the credible testimony of Krieger, this Court finds that the proposed state budget does not present a threat to Laurel's funding. To the extent the county funding may decrease, the impact is minimal. Furthermore, as a financially healthy organization, Laurel is able to absorb the increased health insurance costs and is not facing a financial crisis.

Testimony of Vail

W. Harrison Vail identified himself as a member, director, and officer of Laurel. Vail's daughter is a consumer of Laurel's services. Vail was a member of the board of directors prior to the state court litigation, and thus he is a member of the "Current Board" pursuant to the terms of the status quo order. He was also voted to be a member of the reconstituted board at the September 6, 2011 membership meeting and will be a member of that newly created board if the action taken by the membership at that meeting is ultimately determined to be valid in the underlying litigation. He is named as a defendant in the state court action, and he and the other Petitioning Members filed counterclaims in that action. The only relevant point of Vail's testimony for the purposes of this proceeding is that he, as a board member, was not contacted with respect to the decision to file the bankruptcy petition and never approved the decision. This point is undisputed and consistent with the testimony of Gera, who acknowledged that Vail, and one other board member, were intentionally not included in the vote. Accordingly, we find that the full board of directors did not unanimously approve the bankruptcy filing.

In light of these facts, the Court now turns to the relief requested.

## IV.      Discussion

Passavant and the Petitioning Members contend that this bankruptcy case should be dismissed as it was filed in bad faith and without appropriate authority. In the alternative to dismissal, Passavant and the Petitioning Members assert, pursuant to the principles of mandatory abstention, permissive abstention, equitable remand, and/or relief from the automatic stay, that the removed action should return to state court for resolution. Thus, aside from the request for dismissal, this Court is faced with a series of questions as to the removed action.

As an initial matter, the Court must determine whether the removed action is "related to" the instant bankruptcy case, such that removal is proper pursuant to 28 U.S.C. §1452(a). If the removed action is related, then the Court must determine whether the removed action is a "core" proceeding. If it is determined to be "non-core", the Court must address whether the proceeding is subject to mandatory abstention pursuant to 28 U.S.C. §1334(c)(2). If the elements of mandatory abstention are not met, the Court must next evaluate whether either permissive abstention under 28 U.S.C. §1334(c)(1) or equitable remand pursuant to 28 U.S.C. §1452(b) is appropriate. Finally, the Court will address whether relief from stay pursuant to 11 U.S.C. §362(d) should be granted to permit the action to proceed in state court. Although this Court finds that dismissal is appropriate, the issues relating to the removed action are addressed as it is clear that the removed action should proceed in state court even if the bankruptcy case were to continue.

Dismissal

Passavant and the Petitioning Members assert that the bankruptcy petition was not filed with appropriate authority. That is, they contend that the full board of directors (referring to

14

those nine individuals in place pursuant to the status quo orders) did not vote to authorize the

filing of the bankruptcy petition. It is undisputed that neither Vail nor Belajac were notified of

any such vote and, in fact, did not vote to approve the action. Laurel contends that, pursuant to its

by-laws, these individuals were not entitled to vote due to conflict of interest. As the

interpretation of the by-laws is one matter at the core of the underlying litigation, a fact which

has been repeatedly noted by the parties throughout the hearings, this Court will not resolve

dismissal on the basis of authority to file the petition but rather holds that alternative justification

warranting dismissal exists as discussed at length herein.[4]

In addition to the question of whether the petition was filed with appropriate authority of

the board of directors, Passavant and the Petitioning Members assert two statutory bases upon

which this Court should dismiss this bankruptcy case: 11 U.S.C. §305(a) and §1112(b).

Pursuant to §305(a)(1), "The court, after notice and a hearing, may dismiss a case under

this title, or may suspend all proceedings in a case under this title, at any time if the interests of

creditors and the debtor would be better served by such dismissal or suspension[.]" Abstention

under this provision is considered to be "an extraordinary remedy that is appropriate only where

the court finds that both creditors and the debtor would be better served by a dismissal." *RHTC

Liquidating Co. v. Union Pac. R.R.* (*In re RHTC Liquidating Co.*), 424 B.R. 714, 720 (Bankr.

W.D. Pa. 2010). When litigation has been commenced in another forum and that forum is

available to determine the parties' interests, dismissal is especially appropriate. *See Monsour

Medical Ctr, Inc. v. Stein* (*In re Monsour Medical Center, Inc.*), 154 B.R. 201, 207 (Bankr. W.D.

---

[4] Not presently before this Court is another issue regarding the authority to file the bankruptcy
petition, which can only be resolved after the state court action is concluded. The question
remains whether the board of directors in place pursuant to the status quo order or the board of
directors selected by the Petitioning Members is the true board of directors authorized to act on
behalf of Laurel. Passavant and the Petitioning Members raise this issue but acknowledge that it
cannot be determined at this time.

Pa. 1993). The burden is on Passavant and the Petitioning Members to establish that egregious circumstances exist, such that dismissal is warranted pursuant to §305(a).

In this case, Passavant and the Petitioning Members met their burden. Laurel acknowledges that it has no unsecured creditors. Thus, the bankruptcy proceeding provides no apparent benefit to creditors. The true benefit of the continuation of the bankruptcy case is not to Laurel either, but rather appears to be to the benefit of one of the factions claiming control of Laurel, i.e., the management and board of directors in place pursuant to the status quo orders. Furthermore, the filing of the bankruptcy case, with no clear bankruptcy related purpose, appears only to increase litigation costs for Laurel.  What would be in the best interest of all parties, especially the consumers of Laurel's services, is the expeditious resolution of the state court matter. Judge Marsili was achieving precisely that. He has done extensive work on this case and is extremely familiar with the parties, the underlying facts, and the intricate legal issues presented.[5]

As argued by Laurel, this bankruptcy case was filed "defensively" due to the posture of the state court action after the May 11, 2012 hearing. That is, Judge Marsili was considering, among other options, placing either Passavant in a management role over Laurel or placing Laurel in a receivership. Laurel ultimately conceded, with qualification, to remand and relief from stay, but contended that the bankruptcy case would provide a mechanism to maintain the status quo in the meantime and preserve Laurel as an organization. The status quo orders entered by Judge Marsili were designed for precisely that purpose. However, Laurel comes to this Court

---

[5] In fact, in a thorough, twenty-eight page Decision and Order (*Laurel's Exhibit 60*) issued after an evidentiary hearing, Judge Marsili not only ruled on the pending matter but detailed the factual background leading to the dispute and analyzed the intricate issue of the membership of Laurel.

complaining of the burdens of the status quo orders on its operations. The need for the status quo

orders in this matter, however, is clear. To permit the current board to remain in place when it

has not yet been determined whether it is properly in control of Laurel requires some restraint on

its actions. If Laurel is not complying with those orders, as the Petitioning Members and

Passavant contend, then clearly Judge Marsili is forced into the position of choosing another

option, i.e., different management, pending the resolution of the underlying claims. Furthermore,

it is not clear that Judge Marsili intended to appoint Passavant as management of Laurel on an

interim basis. It is apparent that Laurel, as an organization, may benefit from the appointment of

a neutral management that holds the interests of the the organization and its consumers as the

paramount concern.[6] This Court will not permit the continuation of a bankruptcy case which

appears to have been filed with the intent of tying Judge Marsili's hands and second-guessing his

orders. Judge Marsili is clearly very capable and competent to handle the case to its conclusion.

The filing of the bankruptcy case appears to be nothing more than an attempt by the

current management of Laurel to remain in control when faced with the threat that Judge Marsili

may grant the renewed request for preliminary injunction. Thus, based upon the testimony and

argument, this Court finds that the filing was a litigation tactic to avoid an imminent, potentially

adverse decision in state court. As there is no doubt that appropriate relief can be fashioned by

the learned state court judge, such that operations are continued for the benefit of the consumers

---

[6] There is no doubt that the current board of Laurel does not wish to see Passavant installed as
interim management pending the resolution of the litigation just as it is equally clear that
Passavant and the Petitioning Members are troubled by the current management remaining in
place while the parties await a determination by the court. From the perspective of the current
board and management of Laurel, placing Passavant in the position of interim management may
be akin to putting the fox in the hen house so to speak. It is apparent that having a neutral party
installed as interim management of Laurel is a viable option, and it is noteworthy that, if this
case were to continue in bankruptcy court, it presents facts which would suggest the appointment
of a trustee.

until this internal power struggle is resolved, dismissal and abstention by this Court is

appropriate pursuant to §305(a).

As an alternative basis for dismissal, Passavant and the Petitioning Members cite to 11

U.S.C. §1112(b), which provides that a court may dismiss a Chapter 11 case for cause if it is in

the best interest of the creditors and the estate. *See Official Comm. Of Unsecured Creditors v.*

*Nucor Corp.* (*In re SGL Carbon Corp.*), 200 F.3d 154, 159 (3d Cir. 1999). Chapter 11

bankruptcy petitions are subject to dismissal for cause unless filed in good faith. *Id.* at 162.

"Once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has

been filed in 'good faith.'" *Id.* at 162, n.10.

In *In re Integrated Telecom Express, Inc.*, the debtor's landlord contended that the

bankruptcy petition should be dismissed for lack of good faith as the debtor was never in

financial distress and the purpose of the petition was for nothing more than to frustrate the

landlord's claims and increase the distribution of the debtor's estate to its shareholders at the

landlord's expense. *See NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.* (*In re*

*Integrated Telecom Express, Inc.*), 384 F.3d 108, 112 (3d Cir. 2004). The Third Circuit Court of

Appeals agreed, holding that the petition was not a good faith filing, as it was filed by a

financially healthy debtor, with no intention of reorganizing or liquidating as a going concern,

with no reasonable expectation of maximizing the value of the estate for creditors, and solely to

benefit from a provision of the Bankruptcy Code with respect to its lease. *Id.*

"At its most fundamental level, the good faith requirement ensures that the Bankruptcy

Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical

to the basic purposes of bankruptcy[.]" *Id.* at 119. The good faith analysis focuses on two

inquiries: (1) whether the petition serves a valid bankruptcy purpose and (2) whether the petition

was filed merely as a tactic to obtain a litigation advantage. *Id.* at 119-20. Two valid purposes of

Chapter 11 bankruptcy petitions are (1) "preserving going concerns" and (2) "maximizing

property available to satisfy creditors." *Id.* at 119. Whether a liquidation plan or a reorganization

plan, either must serve a valid bankruptcy purpose. *Id.* at 120, n.4. As Laurel has identified no

unsecured creditors, this Court will focus on "preserving going concerns" as a potential purpose

for this bankruptcy petition.

In *In re SGL Carbon Corp.,* the district court found the petition to have been filed in good

faith for two reasons: (1) distractions caused by litigation posed a serious threat to the debtor's

continued successful operations and (2) the litigation may result in a judgment that could cause

financial and operational ruin. *See* 200 F.3d at 162. On appeal, the Third Circuit found each of

these findings to be clearly erroneous. *Id.*  First, while the litigation was taking up time, there

was no serious threat to the company. *Id.* Second, the debtor was financially healthy and the

filing was premature. *Id.* at 163-64. Debtor's ability to meet its debts was one factor considered

in determining that the petition was not filed with a valid reorganizational purpose. *Id.* at 164.

Although courts have permitted companies to file valid Chapter 11 petitions when pending

litigation poses a serious threat to the companies' long term viability, in those cases the debtors

were facing serious financial and/or managerial difficulties at the time of filing. *Id.*

In this case, Moser and Gera testified that the litigation is causing distraction and

impacting operation of the business. Neither offered testimony establishing that the distraction of

litigation poses a serious threat to Laurel's operational well-being. Furthermore, it should be

noted that the litigation was commenced by Laurel. Although Laurel contends that the status quo

orders in the underlying litigation interfere with operations, the testimony revealed that as to a

number of actions which Laurel alleges it is prevented from taking, permission to act was not

sought. The status quo orders are intended to maintain a delicate balance pending the outcome of

the litigation. Although it may be an inconvenience to the current board of directors and

management to seek court permission, it is a necessary inconvenience until control is finally

resolved. Furthermore, to the extent that Laurel believes that by filing the bankruptcy petition the

disruption of litigation will cease, that is an incorrect assumption. The underlying litigation must

be resolved and the burdens of that litigation will continue. Furthermore, in addition to those

burdens, new obligations will be imposed on Laurel as a debtor in a bankruptcy case.

As to a valid bankruptcy purpose, Laurel made feeble attempts to establish financial

distress.[7] However, the testimony of Moser, Gera, and Krieger all support the conclusion that, at

least as of the time of filing, Laurel was financially healthy. The company was solvent and

projected ending the year with a profit. Although Moser testified that Laurel was facing a

significant reduction in state waiver funding, the credible evidence, including the proposed

budget, established that Moser had no valid basis for perceiving such a threat. In addition, Laurel

was capable of absorbing the increased health insurance costs.

Furthermore, the state court litigation did not impose the threat of a massive judgment

against Laurel. Rather, the litigation will determine who has the authority to act on behalf of

Laurel. While it is true that, *if* the Petitioning Members are determined to have authority, they

---

[7] Laurel contends that Passavant and the Petitioning Members have taken inconsistent positions
regarding Laurel's finances by representing to the state court that Laurel was in financial distress
and subsequently representing to this Court that Laurel is financially strong. Thus, Laurel
contends that judicial estoppel is applicable and Passavant and the Petitioning Members should
be prohibited from taking any contrary position. However, this Court is not basing its decision on
arguments, but rather on evidence. As this Court finds that the petition was not filed in good
faith, it would be inappropriate to permit the bankruptcy case to proceed simply because another
party also allegedly acted in bad faith. Furthermore, as the litigation will return to state court,
Passavant and the Petitioning Members have now produced evidence and argued extensively as
to Laurel's financial health and are unlikely able to escape that position upon the return of the
action to state court.

intend to proceed with the acquisition of Laurel by Passavant, that is not a financial threat to

Laurel's survival, but rather would simply be a business decision to affiliate with Passavant by

those with authority to do so.

The one very real threat to Laurel's finances is the possibility that the DPW will

terminate its funding as suggested at the May 23, 2012 status conference. Laurel contends that

even if it is viewed as financially healthy at this time, a decision by the DPW to discontinue its

funding would pose an imminent threat to its continued operation, as the DPW licenses Laurel

and provides the overwhelming bulk of its funding. The discontinuation of DPW funding of

Laurel will force Laurel out of business as Moser testified. Laurel seeks the opportunity to

attempt to deal with the issues it has with the DPW while remaining in bankruptcy.

This Court finds that the possibility that the DPW will terminate funding is insufficient to

warrant the filing of this case at this time. First, the DPW is apparently completely unwilling to

deal with Laurel's current management. There is no reason to believe that this bankruptcy case

will change the department's mind. Second, the bankruptcy court may not be able to force the

DPW to license or provide funding to Laurel. Thus, as the alleged purpose of the filing is to

maintain Laurel as a going concern, that goal appears impossible if the primary funding is lost.

This is precisely the point made by DPW's counsel when he stated that this bankruptcy case can

go nowhere if DPW terminates funding to Laurel. Third, it is not apparent why management

cannot attempt to negotiate with the DPW regarding funding outside of the bankruptcy case.

Fourth, based upon the representations made by DPW's counsel, the department's frustration is

with the current management of Laurel. The department supports an affiliation with Passavant.

Counsel for the DPW was cautious to state that the department would not take any action to

precipitate a crisis and that it was awaiting Judge Marsili's ruling. Without any further

21

elaboration on the statements made at the status conference, it appears that the DPW is awaiting

a decision as to who is in control of Laurel before determining what steps to take regarding

funding. If the Petitioning Members had the authority to act as they did and reconstitute the

board, then the DPW supports the Petitioning Members' decision to affiliate with Passavant. If it

is determined that the current board of Laurel maintains control and had the right to terminate

negotiations with Passavant, then the termination of funding by the DPW may occur. The DPW's

decision to continue funding appears to be one more issue tied up in the underlying litigation.

Thus, the argument that the potential termination of funding by the DPW creates a financial

threat justifying the filing of the bankruptcy case *at this time* for an otherwise financially healthy

organization with no unsecured creditors appears to be nothing more than another attempt by one

faction of Laurel's board to maintain control. Furthermore, as stated in *SGL Carbon,* "The mere

possibility of a future need to file, without more, does not establish that a petition was filed in

'good faith.'" 200 F.3d at 164. For the foregoing reasons, this Court finds that the bankruptcy

case was not filed in good faith and is dismissed without prejudice.

As stated *supra,* the filing of the bankruptcy petition was a litigation tactic to avoid a

potentially adverse ruling in state court. Although it is not this Court's intention to discourage

bankruptcy filings with a legitimate purpose, the extraordinary circumstances of this case justify

dismissal. Furthermore, even if the bankruptcy proceeding were permitted to continue, the

removed action would have returned to state court for resolution as this Court would have ruled

in favor of abstention, remand, and relief from stay. Although dismissal of the bankruptcy case

will necessarily remove any impediment the state court had in proceeding with the litigation, in

the interest of thoroughly addressing the issues raised by the parties, the Court turns to the Notice

of Removal, Motion for Remand, and Motion for Relief from Stay.

Notice of Removal

Pursuant to 28 U.S.C. §1452(a), "[a] party may remove any claim or cause of action in a

civil action . . . to the district court for the district where such civil action is pending, if such

district court has jurisdiction of such claim or cause of action under section 1334 of this title." In

addition to possessing subject matter jurisdiction over the bankruptcy case, "the district

courts . . . have original but not exclusive jurisdiction of all civil proceedings arising under title

11, or arising in or related to cases under title 11." *See* 28 U.S.C. §1334(b). Pursuant to 28

U.S.C. §157(a), bankruptcy cases and the proceedings arising under, arising in, or related thereto

may be, and are, in fact, referred by the district court to bankruptcy judges.

At the very least, in order for removal to be appropriate, the proceeding must be "related

to" the bankruptcy case for purposes of establishing jurisdiction. "A proceeding is considered to

be 'related to' a bankruptcy case . . . if the 'outcome of the proceeding could conceivably have

any effect on the estate being administered in bankruptcy.'" *See Lichtenfels v. Electro-Motive

Diesel, Inc.*, No. 09-1590, 2010 WL 653859, at *2, 2010 U.S. Dist. LEXIS 15079, at *7 (W.D.

Pa. Feb. 22, 2010) (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on

other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995)). "'Conceivable'

does not simply mean that a proceeding will have a certain or likely impact upon a bankruptcy

estate, but that 'it is *possible* that a proceeding may impact the debtor's rights, liabilities, options,

or freedom of action, or the handling and administration of the bankrupt estate." *See Lichtenfels*,

2010 WL 653859, at *3, 2010 U.S. Dist. LEXIS 15079, at *10 (quoting *Halper v. Halper*, 164

F.3d 830, 837 (3d Cir. 1999)).

In this case, the removed action is undeniably related to the instant bankruptcy case. At

issue in the removed action is a determination of which individuals are properly in control of

Laurel. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§1334 and 157. Thus,

removal was proper, and the next matter to consider is whether the action is entitled to remain

here.

Before addressing abstention, remand, and relief from stay, it is noteworthy that Laurel

consented to the continuation of the litigation in state court with the qualification that this Court

continue to exercise jurisdiction over the assets of the bankruptcy estate. Laurel raises a

significant point that, if the bankruptcy case remains pending, there should be no disposition of

estate assets without this Court's approval. However, under the circumstances, this appears to be

an attempt by Laurel's current board to restrict the ability of the Petitioning Members to proceed

with the affiliation with Passavant if they are successful in state court. If the Petitioning

Members succeed in state court, then this bankruptcy case was not filed with appropriate

authority in the first place.[8] Furthermore, it is not apparent that any potential disposition of

Laurel's assets was before Judge Marsili other than in the event of the Petitioning Members'

success. Thus, Laurel has not established any realistic threat to the disposition of estate assets in

the underlying litigation. As a practical matter, any qualification imposed on remand would too

---

[8] Passavant's characterization at the May 31, 2012 hearing is correct:

> The bottom line of the State Court case will be a resolution of the question of who
> controls Laurel and ultimately therefore who gets the directed disposition of its
> assets.
> If Laurel wins then it gets to control the disposition of Laurel's assets. If the
> petitioning members win then the petitioning members get to control the
> disposition of those assets including terminating a bankruptcy case that never
> should have been brought in the first place. In other words the State Court action
> is determinative.
> Laurel is trying to establish this Court, I believe, as some sort of Appellate Court
> in violation of the Rooker-Feldman Doctrine because the only way that this Court
> would ever be asked to exercise its jurisdiction over the assets is if Laurel loses in
> the State Court.

*See* 05/31/12 Transcript, Doc. No. 100, at 19.

severely restrict Judge Marsili's ability to manage and rule in this case. This Court now turns to

the factors which overwhelmingly support abstention, remand, and relief from stay.


Mandatory Abstention

"Upon motion by a party, a district court is required to abstain from hearing proceedings

that are non-core and are based solely on a state law claim or cause of action (i.e. 'mandatory

abstention')." *See Lichtenfels v. Electro-Motive Diesel, Inc.,* No. 09-1590, 2010 WL 653859, at

*3, 2010 U.S. Dist. LEXIS 15079, at *8 (W.D. Pa. Feb. 22, 2010). Abstention is required when

the following five requirements are met:

    (1)    the proceeding is based on a state law claim or cause of action;

    (2)    the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11,

    (3)    federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case;

    (4)    an action "is commenced" in a state forum of appropriate jurisdiction; and

    (5)    the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006). With these requirements in mind, the Court

examines the removed action.

As to the first element, the proceeding is based on a state law cause of action. The

removed action involves Laurel's request for declaratory relief pursuant to Pennsylvania law,

and primarily requires application of Pennsylvania's Nonprofit Corporate Law of 1988. Thus, the

first element is met.

The second element requires a determination of whether the proceeding is core or non-

core. The Third Circuit Court of Appeals set forth a two-part analysis for guidance in

determining whether a proceeding is core or non-core. *See Halper v. Halper*, 164 F.3d 830, 836

(3d Cir. 1999). First, courts are directed to consult 11 U.S.C. §157(b) for an illustrative list of

proceedings which may be "core". *Id.* Second, courts are to consider whether a proceeding invokes a substantive right provided by title 11 (i.e. "arises under" title 11), or one that could only arise in the context of a bankruptcy case (i.e. "arises in" a title 11 case). *Id.* "All other proceedings that are 'related to' a bankruptcy case are considered non-core." *See Lichtenfels*, 2010 WL 653859, at *3, 2010 U.S. Dist. LEXIS 15079, at *8.

Laurel asserts that the removed action constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) & (E). That is, Laurel contends that the removed action is a matter concerning the administration of the estate and involves an order to turn over property of the estate. Passavant, however, contends that the removed action is non-core and does not consent to the entry of final orders and judgment by this Court. To resolve the dispute, the Court looks to the substance of the removed action.

The Complaint involves purely issues of Pennsylvania law. In fact, the removed action proceeded in state court for over nine months prior to the bankruptcy case. The Complaint neither invokes a substantive right provided by the Bankruptcy Code nor arises solely in the context of a bankruptcy case.

As to the third element, there is no alternative basis for jurisdiction in this Court other than the relation to the bankruptcy case. Thus, the third element is satisfied.

This action was commenced in the Westmoreland County Court of Common Pleas where it had been pending for nearly nine months prior to the bankruptcy case. The state court was an appropriate forum and the fourth element for mandatory abstention is satisfied.

The final consideration is whether the matter can be timely adjudicated in the state forum. The state court had been addressing various matters involved in the proceeding for some time, was prepared to rule on some motions if not for the bankruptcy filing, and a trial was scheduled

to be held in August. Furthermore, the state court is extremely familiar with the facts of the case

and has already issued a decision and order with respect to initial requests for preliminary

injunctions. Therefore, the fifth and final element is met under the facts of this case.

Accordingly, abstention is mandatory.

As this Court has considered all issues raised by the parties and finds that all factors

strongly support the return of this litigation to the state court, permissive abstention, equitable

remand, and relief from stay will also be addressed herein as alternatives to mandatory

abstention.


<u>Permissive Abstention</u>

"Under 28 U.S.C. §1334(c)(1), a district court may also abstain from hearing a core

proceeding . . . 'in the interest of justice, or in the interest of comity with State courts or respect

for State law' (i.e. 'permissive abstention')." *See Lichtenfels,* 2010 WL 653859, at \*3, 2010 U.S.

Dist. LEXIS 15079, at \*8. Permissive remand, however, is noted to be an extremely narrow

exception. *Id.* Thus, when a federal court is determined to have proper jurisdiction, "it has a

'virtually unflagging obligation' to exercise the jurisdiction conferred upon it by the Constitution

or Congress." *See Lichtenfels*, 2010 WL 653859, at \*3, 2010 U.S. Dist. LEXIS 15079, at \*9. A

number of factors are relevant to determining whether permissive abstention is appropriate:

(1)     the effect on the efficient administration of the estate;
(2)     the extent to which state law issues predominate over bankruptcy issues;
(3)     the difficulty or unsettled nature of applicable state law;
(4)     the presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5)     the jurisdictional basis, if any, under 28 U.S.C. §1334;
(6)     the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7)     the substance rather than the form of an asserted "core" proceeding;

(8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)    the burden on the court's docket;

(10)   the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)   the existence of a right to a jury trial; and

(12)   the presence of non-debtor parties.

*See Lichtenfels*, 2010 WL 653859, at *9, 2010 U.S. Dist. LEXIS 15079, at *26-27.

Some of these items have been addressed in connection with the analysis of dismissal and mandatory abstention. Factors two, four, five, and seven have been addressed, and favor abstention.

As to the difficulty or unsettled nature of the Pennsylvania law at issue, Passavant and the Petitioning Members contend that the litigation involves unique questions of state law. Based upon the record, this Court agrees.

As to factor nine, this Court does not consider retaining the adversary proceeding on its docket to be a burden. However, as Judge Marsili has addressed these matters for some time and is prepared to rule on pending motions, it is inefficient to retain the removed action in this Court. In the interest of judicial economy, the litigation should continue in state court.

As to alleged forum shopping, the timing of the bankruptcy filing is highly suspect as previously discussed and is indicative of bad faith. Therefore, consideration of factor ten weighs in favor of abstention.

As to factor eleven, Passavant and the Petitioning Members have asserted a right to a jury trial, providing additional reasons for the court to abstain.

As to the final factor, Passavant and the Petitioning Members are non-debtor parties. Laurel chose the forum when it commenced the state court action. The parties litigated for approximately nine months in that forum until Laurel asserted that the court's orders created an

inconvenience and removed the action to this Court. In light of these facts, the non-debtor parties

should be permitted to continue the litigation in state court.

In sum, although permissive abstention is only granted in limited circumstances, the

factors overwhelmingly favor abstention in this case.


Equitable Remand

When a claim or cause of action is removed, a court "may remand such claim or cause of

action on any equitable ground." *See* 28 U.S.C. §1452(b). If there is any doubt as to whether

remand is appropriate, courts should resolve the matter in favor of remand. *See Lichtenfels,* 2010

WL 653859, at *3, 2010 U.S. Dist. LEXIS 15079, at *9. "The considerations used to determine

permissive remand under Section 1334(c)(1) and equitable remand under Section 1452(b) are

essentially the same." *GSL of Ill, LLC v. Pitt Penn Oil Co., LLC*, No. 09CV0571, 2009 WL

1691815, at *4, 2009 U.S. Dist. LEXIS 51428, at *10 (W.D. Pa. June 17, 2009). As this Court

has addressed those factors at length, it is clear that in this case equitable remand is appropriate,

and the case would have been remanded.[9]


Relief from Stay

Pursuant to 11 U.S.C. §362(d)(1), "[o]n request of a party in interest and after notice and

a hearing, the court shall grant relief from stay . . . such as by terminating, annulling, modifying,

or conditioning such stay for cause . . . ." As "cause" is not defined, bankruptcy courts determine

what constitutes "cause" based on the totality of the circumstances. *See Baldino v. Wilson (In re*

---

[9] The Court notes that, within their Motion for Remand, Passavant and the Petitioning Members
request an award of their costs and expenses, including attorneys' fees, resulting from or
consequent to the removal of the state court litigation. As the Motion for Remand is moot due to
dismissal of the bankruptcy case, the Court does not reach the issue.

*Wilson*), 116 F.3d 87, 90 (3d Cir. 1997). In a case where non-bankruptcy litigation was commenced in another forum, relief from stay may be appropriate to permit that litigation to conclude, especially when multiple parties are involved or when trial is ready to proceed. *See Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.* (*In re Mid-Atlantic Handling Sys., LLC*), 304 B.R. 111,130 (Bankr. D.N.J. 2003).

In this case, determination of who controls Laurel is of paramount concern. The decisions regarding Laurel's continued operation or its affiliation with Passavant depend upon resolution of the state court action. Furthermore, whether Laurel will continue to receive funding from the DPW will also likely be determined upon resolution of the litigation. Judge Marsili's experience and knowledge of this case and the fact that he is prepared to rule on an important matter at this time lead this Court to conclude that the interests of judicial economy and the expeditious and economical resolution of litigation are best served by granting relief from stay.

V.      **Conclusion**

For the foregoing reasons, this Court finds that the bankruptcy petition was filed in bad faith as a litigation tactic and dismissal without prejudice is appropriate based upon these extraordinary circumstances pursuant to 11 U.S.C. §305(a) or, in the alternative §1112(b). Had the bankruptcy case been permitted to proceed, abstention and/or remand of the removed action would have been appropriate and relief from stay to proceed with that action would have been granted. However, as dismissal of the bankruptcy case is appropriate, the Court need not take any additional action as to the removed action, which shall proceed in state court as it had been prior

to the filing of the bankruptcy petition. Therefore, the Notice of Removal, the Motion to

Remand, and the Motion for Relief from Stay are moot. An appropriate order will be entered.


Date: June 12, 2012                                     ___/s/ Carlota M. Böhm_____
                                                        Carlota M. Böhm
                                                        United States Bankruptcy Judge


**CASE ADMINISTRATOR TO MAIL TO:**
      Kathleen Robb, Esq.
      Michael Kaminski, Esq.
      Steven P. Engel, Esq.
      John R. Gotaskie, Jr., Esq.
      Gerri L. Sperling, Esq.
      T. Lawrence Palmer, Esq.
      Jason Manne, Esq.
      John R. O'Keefe, Jr., Esq.
      Regis J. Schnippert, Esq.
      Jennifer M. Irvin, Esq.